**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| RICHARD HEIMER, | Case No. 3:25-cv-50250 |
| Plaintiff, | |
| v. | Honorable Iain D. Johnston |
| CALEB BROWN, et al. | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

### I.     Background[1]

On October 26, 2023, Plaintiff Richard Heimer was installing a washing machine in his home when his gun discharged, striking his young son. Complaint [1] ¶¶ 1-3. Sergeant Caleb Brown, Patrol Officer Edgar Altamirano, Police Chief for the Village of Roscoe Sam Hawley, Deputy Police Chief Thomas Farone, and Detective Phillip Harris (collectively with the Village of Roscoe, "Defendants") responded to the subsequent 911 call. *Id.* at ¶¶ 14-19, 43-68.

At the time of the shooting, Heimer possessed a valid Illinois Firearm Owner's Identification (FOID) Card and an Illinois Concealed Carry Permit. *Id.* at ¶ 25. The firearm had been secured inside his waistband, attached to his belt, and

---

[1] These allegations are taken from the Complaint [1]. The Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

holstered in a half-cocked position.[2] *Id.* at ¶ 26, 28. The holster completely covered the handgun's trigger. *Id.* at ¶ 27. Without being touched, the firearm discharged, sending a bullet through the bottom of the holster and through the back of Heimer's pants, burning his clothing and striking Heimer's two-year-old son in the leg. *Id.* at ¶¶ 20, 35-37, 73. Heimer removed the firearm and inspected it, then discovered his injured son and placed the firearm on the floor. *Id.* at ¶ 38. Heimer then took his son to the front lawn, where 911 was contacted by neighbors. *Id.* at ¶¶ 39-42.

Defendants arrived and arrested Heimer for misdemeanor child endangerment after a short investigation. *Id.* at ¶¶ 14-19, 43-68. Two searches were conducted of Heimer's home following the incident. The first was a protective sweep by the police first arriving at Heimer's home. *Id.* at ¶¶ 79-84. The second was authorized by search warrant, during which Defendants seized several firearms and ammunition from the home, as well as a belt, cannabis, and ballistic vests. *Id.* at ¶¶ 104-108.

Heimer was charged by prosecutors with child endangerment and reckless discharge of a firearm. *Id.* at ¶ 134. The charges were dropped on June 4, 2024,

---

[2] The term "half-cocked" is not defined in the complaint. The Sporting Arms & Ammunitions Manufacturers' Institute—an accredited developer of standards and safety regulations for American firearms—defines "half cock" as "[t]he position of the hammer, when about half retracted and held by the sear, intended to prevent release of the hammer by a normal pull of the trigger. This can be the safety or loading position of many guns." Glossary H, Sporting Arms & Ammunitions Mfrs. Inst., https://saami.org/saami-glossary/?letter=H. This aligns with Defendant's definition from Merriam-Webster. *See* Defendant's Memorandum [16] at 6 n. 1.

The only significance of the half-cocked position gleaned from the face of the complaint is that the gun's safety devices function when carried in a half-cocked position. Complaint [1] at ¶ 29. The Complaint does not affirmatively state that the safety devices were engaged on the firearm when it discharged.

after a grand jury returned no true bill of indictment. *Id.* at ¶¶ 149-152. In the approximately six-month period between his arrest and charges being dropped, Heimer was subject to pretrial supervision, surrender of his firearms and FOID card, and Department of Children and Family Services ("DCFS") involvement. *Id.* at ¶¶ 132-133, 153-162. The events caused him emotional distress, brought about negative press coverage, and led to termination of his residential lease. *Id.* at ¶¶ 163-169.

Heimer now brings ten claims against the Defendants. Specifically, he alleges: (i) 42 U.S.C. § 1983 civil rights violations for false arrest and unreasonable seizure under the Fourth Amendment against Defendants Hawley, Brown, and Altamirano; (ii) a 42 U.S.C. § 1983 civil rights violation for unlawful search of a residence, namely the protective sweep, under the Fourth Amendment against Defendant Hawley; (iii) a 42 U.S.C. § 1983 civil rights violation for unlawful search of a residence under the Fourth Amendment against Defendant Farone; (iv) 42 U.S.C. § 1983 civil rights violations for unlawful search of a residence under the Fourth Amendment against Defendants Harris and Brown; (v) 42 U.S.C. § 1983 civil rights violations for malicious prosecution under the Fourth Amendment against Defendants Brown and Harris; (vi) 42 U.S.C. § 1983 civil rights violations for violation of Heimer's Fourth Amendment rights against Defendants Brown and Harris; (vii) 42 U.S.C. § 1983 civil rights violations for violation of Heimer's Second Amendment rights against Defendants Brown and Harris; (viii) a 42 U.S.C. § 1983 civil rights violation for violation of Heimer's Second and Fourth Amendment rights

3

against Defendant Village of Roscoe; (ix) Illinois state law false arrest claims against Defendants Hawley, Brown, and Altamirano; and (x) Illinois state law malicious prosecution claims against Defendants Brown and Harris. *Id.* at ¶¶ 170-265.

Defendants have moved to dismiss all counts for failure to state a claim. Dkt. 15; Fed. R. Civ. P. 12(b)(6). For the reasons below, the motion is granted as to counts (iv), (vi), (vii), (ix), and (x). The motion is denied as to counts (i), (ii), (iii), (v), and (viii).

## II.    Legal Standard

Federal Rule of Civil Procedure 8 requires only that a complaint contain a short and plain statement "showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations …, however true, could not raise a claim of entitlement to relief." *Id.* at 558. The Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The Court may also consider exhibits attached to the complaint and documents other than the complaint "when they are referenced in the complaint and central to the plaintiff's

claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n. 1 (7th Cir. 2013). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### III. Analysis

#### i. *Count I – 42 U.S.C. § 1983 False Arrest/Unreasonable Seizure Under the Fourth Amendment*

Heimer alleges that Defendants Hawley, Brown, and Altamirano unlawfully seized him, without probable cause or a warrant, in violation of the Fourth and Fourteenth Amendments. Complaint [1] at ¶¶ 171-179. Defendants argue that they had probable cause or arguable probable cause sufficient to arrest, detain, and charge Heimer. Memorandum [16] at 4-7.

Probable cause does not deal in absolutes. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). It requires "something more than a hunch" and less than a "finding that it was more likely than not that the arrestee engaged in criminal activity." *Id.* For an arrest, probable cause exists when "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714.

In Illinois, a person commits endangering the life or health of a child when he: "knowingly: (1) causes or permits the life or health of a child under the age of 18 to be endangered; or (2) causes or permits a child to be placed in circumstances that endanger the child's life or health." 720 ILCS 5/12C-5(a).

5

So, for Defendants to have probable cause to arrest Heimer for endangering the health or welfare of a child, a reasonable, prudent person must have believed—based on the totality of the circumstances—that Heimer was either (1) knowingly causing or permitting the life or health of his son to be endangered, or (2) knowingly causing or permitting his son to be placed in circumstances that endangered his son's life or health.

In the Defendants' favor, they arrived on scene to find a young child shot and a father freely admitting that his gun had caused the injury. That's bad, really bad. It *smells* like a crime may have been committed and certainly amounts to a "hunch." *Abbott*, 705 F.3d at 714. But more is needed. *Id.*

Heimer was lawfully in possession of his firearm. Complaint [1] at ¶ 25. The firearm was safely held inside his waistband, inaccessible to the child. *Id.* at ¶ 26. Heimer's son merely stood some distance behind him in a hallway as Heimer installed a washing machine in the laundry room. *Id.* at ¶¶ 37. Furthermore, *all* evidence available to Defendants at the scene suggested an unknowing discharge and non-criminal activity including (i) the hole in Heimer's pants (had it been observed), (ii) burn marks on Heimer's underpants (had they been observed), (iii) the weapon's presence in the laundry room, (iv) observations of the scene, (v) the interview with Heimer, (vi) an interview with Jessica Heimer (had one occurred), and (vii) the interviews with neighbors. *Id.* at ¶¶ 38, 52, 57-60, 112, 114, 121. Instead, taking the complaint at face value, the investigation effectively concluded with an arrest when Heimer declined to consent to a search of his home. *Id.* at ¶ 69.

Defendants contend that "[h]aving a weapon in a place where it could conceivably fire and hit a child is itself endangering and/or reckless discharge." Memorandum [16] at 7. This can't possibly be true. The natural conclusion of such a proposition would be that *any* person lawfully carrying a weapon in the presence of a child is committing the offense of endangering the life or health of a child.

Defendant's alternative argument, that *arguable* probable cause existed such as to provide them with qualified immunity, is premature *in this case*. Whether a district court should grant a Rule 12 motion at the pleading stage based on the affirmative defense of qualified immunity is a dicey proposition. Sometimes it mustn't, but other times it must. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) ("[d]ismissal under Rule 12(b)(6) on qualified immunity grounds may be inappropriate in many cases, [but] in some cases it is proper, indeed we have reversed the denial of qualified immunity at the pleading stage where appropriate."); *Cf. Schimandle v. DeKalb Cnty. Sheriff's Office*, 114 F.4th 648, 660 (7th Cir. 2024) (granting of qualified immunity at pleading stage was compelled); *Roldan v. Stroud*, 52 F.4th 335, 337 (7th Cir. 2022) ("[r]arely do we see qualified immunity at the pleading stage.").

The allegations in this complaint counsel against qualified immunity at the pleading stage *in this case*. "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.'" *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). *See also,*

*Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). Qualified immunity is fact-intensive determination that exceeds the bounds of plaintiff's requirements at this stage *in this case*. Heimer has stated a claim upon which relief may be granted. Whether Heimer survives the inevitable motion for summary judgment based on qualified immunity will be resolved after discovery.

Based solely upon the complaint, the totality of the circumstances didn't support finding probable cause to arrest Mr. Heimer. The motion to dismiss count (i) is denied.

ii.      *Count II – 42 U.S.C. § 1983 Unlawful Search Under the Fourth Amendment (Protective Sweep)*

Heimer alleges that Defendant Hawley conducted an unlawful search of his home. Complaint [1] at ¶¶ 180-188. Specifically, Heimer argues that Hawley's protective sweep without a warrant violated his constitutional rights. *Id*. Defendants argue that Hawley's protective sweep was proper because Heimer consented to Defendant Harris's entry into his home. Memorandum [16] at 7-8; Complaint [1] at ¶ 60-61.

"A 'protective sweep' is a quick and limited search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990) (emphasis added). Warrantless searches incident to arrest are permissible only when the underlying arrest is lawful. *United States v. Davis*, 119 F.4th 500, 505 (7th Cir. 2024) (citing *Virginia v. Moore*, 553 U.S. 164,

8

177, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008)). A lawful arrest is one based on probable cause. *Moore*, 553 U.S. at 177.

Heimer admits that he permitted Defendant Harris to enter his home during the initial investigation. Complaint [1] at ¶¶ 60-61. This was to "show [Harris] where the incident happened." *Id*. Heimer didn't consent for officers to search his entire home. Based solely upon the complaint, the previous determination that officers lacked probable cause to arrest Heimer forecloses Defendants' ability at this stage to claim a lawful protective sweep. The motion to dismiss count (ii) is denied.

> iii. *Count III – 42 U.S.C. § 1983 Unlawful Search Under the Fourth Amendment (Defendant Farone)*

Heimer alleges that Defendant Farone conducted an unlawful search of his home. Complaint [1] at ¶¶ 189-196. Specifically, Heimer argues that Farone's entry into the home without a warrant or consent amounts to a violation of his constitutional rights. *Id*. Defendants argue that entry by Farone was proper due to Heimer's consent for Defendant Harris to enter the home. Memorandum [16] at 7-8; Complaint [1] at ¶ 60-61.

The Fourth Amendment dearly protects the confines of a home. *See, e.g.*, *Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("when it comes to the Fourth Amendment, the home is first among equals."). When no warrant exists, an exception to the warrant requirement must exist for the entry to be lawful. *See Kentucky v. King*, 563 U.S. 452, 459 (2011).

9

Although Defendants contend that Farone "followed" Harris into the home, this is not supported by the complaint. *Cf.* Memorandum [16] at 8 ("… Defendant Farone followed Defendant Harris…"; Complaint [1] at ¶ 64 ("[w]hen [Heimer] and Defendant Harris entered the [room], Defendant Farone was in [Heimer's] residence."). As it must, the Court declines Defendants' invitation to credit inferences in their favor and ignore well-pleaded allegations in Heimer's favor. *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 895 (N.D. Ill. 2023). Defendants offer no other rationale supported by the complaint for Farone's entry into the home. The motion to dismiss count (iii) is denied.

> iv. *Counts IV & VI – 42 U.S.C. § 1983 Unlawful Search Under the Fourth Amendment (Search Warrant Execution); 42 U.S.C. § 1983 Violation of Fourth Amendment Rights (Search Warrant Seizure)*

Heimer alleges that Defendants Harris and Brown both conducted an unlawful search of his home. Complaint [1] at ¶¶ 197-204, 219-230. Specifically, Heimer argues that the search of his home conducted by Harris and Brown was based on a search warrant obtained with a misleading affidavit and without probable cause and was thus unconstitutional. *Id.* Defendants argue that the valid search warrant signed by a neutral judge was obtained in good faith and therefore may not be the basis of an action for unreasonable search under the Fourth Amendment. Memorandum [16] at 10-11; Search Warrant and Affidavit [15-1]; Complaint [1] at ¶¶ 104-106.

10

Searches undertaken based on valid search warrants are presumptively valid. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "Only when an officer seeks or obtains a warrant 'so lacking in indicia of probable cause as to render … belief in its existence unreasonable,' may the officer face liability for damages." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)).

Heimer asserts that Brown's affidavit, stating that Heimer caused an "accidental discharge," was misleading. Complaint [1] at ¶ 200. But this can't be the case. Surprisingly—perhaps even refreshingly—Brown's account in the affidavit is nearly identical to Heimer's complaint, and the terminology in question— "accidentally"—is referred to as a third-person indirect quote of Heimer's, rather than Brown's own description of events. Search Warrant Affidavit [15-1] at 2 ("[Heimer] was explaining to paramedics and officers… that his firearm was accidentally discharged."). Although there is certainly a wide range of mental culpability between "intentional" and "accidental," and Heimer may have preferred the wording of "spontaneously," Brown's assertion in the affidavit that the weapon's firing was "accidental" is true to not only what Heimer said at the scene but also to Heimer's complaint. The inclusion of "accidental" wasn't sufficient to have misled the judge towards signing the warrant. Likewise, Heimer's other issues with the affidavit (including minor omissions and Heimer "servicing a washing machine" rather than "bending down to pick up a water line") are insufficient to defeat the presumption of validity as a matter of law.

11

Notwithstanding the Court's previous determinations, the affidavit submitted by Defendant Brown was not "so lacking in indicia of probable cause as to render belief in its existence unreasonable." *Briggs*, 475 U.S. at 344-45. The search conducted by Defendants Harris and Brown following the warrant's issuance was lawful and Heimer has failed to state a claim upon which relief may be granted. The motion to dismiss counts (iv) and (vi) is granted.

### v. Count V – 42 U.S.C. § 1983 Malicious Prosecution

Heimer alleges that Defendants Harris and Brown, in addition to the forementioned false arrest, maliciously prosecuted Heimer, pointing to the six months of pretrial services, the prohibition on owning firearms, and forfeiture of his FOID and CCL. Complaint [1] at ¶¶ 205-218; Plaintiff's Response to Motion to Dismiss [23] at 11. Defendants again argue that probable cause and arguable probable cause weigh in favor of dismissal. For reasons described previously, this argument is rejected. Additionally, Defendants contend that Heimer has failed to demonstrate any implication of the legal process in his claim, which they argue is necessary for a malicious prosecution claim. Memorandum [16] at 9-10.

These are the elements of malicious prosecution in Illinois: (1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citing *Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648 (2006)). With regards to damages, the

plaintiff must provide evidence that he suffered actionable harm resulting from filing of criminal charges by the prosecutor. *Townsend v. Wilson*, 652 F. App'x. 449, 453 (7th Cir. 2016). In the Seventh Circuit, deprivations to liberty must exceed merely having to appear in court. *Id.* (internal citations omitted).

Factors (1), (2), and (4) are uncontested at this stage. The Court has already found in favor of Heimer for factor (3). Concerning factor (5), while appearances at pretrial services are closely analogous to appearances in court, Heimer has also pled the temporary forfeiture of his firearms, FOID, and CCL as a deprivation. Complaint [1] at ¶ 132. Heimer was also subject to a DCFS investigation due to the criminal matter. *Id.* at ¶¶ 153-162. These are significant deprivations of constitutionally protected liberties that may arguably exceed that of appearing in court. Based solely on the complaint, Heimer has sufficiently stated a claim of malicious prosecution to survive a motion to dismiss. The motion to dismiss count (v) is denied.

vi. *Count VII – 42 U.S.C. § 1983 Violation of Second Amendment Rights (Search Warrant Seizure of Heimer's Firearms)*

Defendants seized Heimer's firearms based on a search warrant. Complaint [1] at ¶ 108. He argues this amounts to a violation of his Second Amendment rights. Complaint [1] at ¶¶ 231-246. Defendants argue that the Second Amendment doesn't preclude seizure of firearms under certain circumstances, and regardless the Fourth Amendment is the better vehicle for analysis. Memorandum [16] at 12-13.

The Seventh Circuit has not addressed whether officers' seizure of firearms implicates the Second Amendment right to keep and bear arms. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571-572 (7th Cir. 2014) (declining to address the issue and describing it as a "sensitive one, … implicat[ing] not only the individual's right to possess a firearm, but the ability of the police to take appropriate action when they are confronted with a firearm that may or may not be lawfully possessed, and which irrespective of the owner's right to possess the firearm, may pose a danger to the owner or others."). *See also*, *Avitia v. City of Chicago*, 2024 U.S. Dist. LEXIS 90067, 2024 WL 2274101 (N.D. Ill. 2024).

Constitutional claims must be addressed under the most applicable provision. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Allegations that officers, based on a search warrant, seized firearms and ammunition from a residence (in addition to a belt, cannabis, and ballistic vests) is squarely within the arena of Fourth Amendment jurisprudence, not the Second Amendment. Count VII asks this Court to effectively separate the constitutionality of the search warrant affidavit and execution by line item, into "Second Amendment" and "Fourth Amendment" buckets, and perhaps even permitting two cracks at paydirt with the seizure of the firearms.  This runs counter to *Conyers*. The search and seizure are just that: search and seizure. Their reasonableness will be evaluated under the Fourth Amendment. The motion to dismiss count (vii) is granted.

14

  *vii.*  *Counts VIII – 42 U.S.C. § 1983 <u>Monell</u> Claim Against Village of Roscoe*

Heimer alleges that Defendant Hawley, as the "final decisionmaker" for the Village of Roscoe, has implicated the Village of Roscoe in the deprivation of his constitutional rights. Complaint [1] at ¶¶ 247-246(2).[3] *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). Defendants have argued that Heimer has failed to establish Hawley as a final policymaker necessary to establish a claim for municipal liability under *Monell.*

When an individual with final policymaking authority for the municipality (on the subject in question) directly causes a constitutional deprivation, the municipality may be held liable. *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). However, *decisionmaker* is not equivalent to *policymaker. Id., see also Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013). To state a plausible claim, Heimer must state not that Hawley was the final decisionmaker for his allegedly false arrest and malicious prosecution, but rather that Hawley was the final policymaker for the Village of Roscoe, as it pertained to (false) arrests and (malicious) prosecutions.

In this case, Heimer's complaint is deficient in that he only pled Heimer as the final decisionmaker. Complaint [1] at ¶¶ 247(2)-255. Heimer seeks to rectify this in his response to the motion to dismiss, where he alleges Hawley is both the final decisionmaker and the final policymaker for the Village of Roscoe. Response to

---

[3] A typographical error is present in the complaint. After ¶ 252, the next paragraph is ¶ 244. This causes ¶¶ 244-252 to be repeated, first at pp. 32-33, then at pp. 34-35. For the purposes of citations, the first instance of ¶¶ 244-252 are referred to by their number; the second instance are referred to by their number followed by (2).

15

Motion to Dismiss [23] at 14-15. Heimer also attached the municipal code for the Village of Roscoe to his response, in which the Police Chief (Hawley) is described as "responsible for the proper management and conduct of the department[,]" with the ability to "make reasonable regulations… to govern the members of the police department in the performance of their duties." Response to Motion to Dismiss [23] Ex. H, §§ 3-25, 3-26. The proper management clause isn't policymaking; it's administration. But the code's authorization for Hawley—as police chief—to make forward looking regulations governing police department members' future actions is close enough at this stage to meet the policymaking requirement. *See Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992). Whether this claim survives further scrutiny is left for another day, but the Court has its doubts.

In deciding a motion to dismiss, although not best practices, plaintiffs may allege facts in a brief opposing dismissal and those new allegations "may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n. 2 (7th Cir. 1997); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)).

It is entirely consistent with the complaint for Hawley to be both the final decisionmaker (as outlined in the complaint) and the final policymaker (as expressed in the response and supported by the municipal code). Hawley's status as the final policymaker might subject the Village of Roscoe to liability for his alleged constitutional violation. Taking the complaint and consistent features of the

16

response together, Heimer has sufficiently stated—albeit barely—a claim of municipal liability under § 1983 to survive a motion to dismiss. The motion to dismiss count (viii) is denied.

> viii.    *Counts IX & X – Illinois State Law False Arrest and Malicious Prosecution*

Heimer alleges state law claims of false arrest and malicious prosecution. Defendants argued, in addition to probable cause and arguable probable cause, that the applicable statute of limitations has expired on Heimer's state law claims. In his response, Heimer did not address Defendants' argument as to counts (ix) and (x). Response to Motion to Dismiss [23] at 15. Further, Heimer effectively abandoned his claim to counts (ix) and (x) in his prayer for relief. *Id*. ("[f]or the reasons stated above, this court should deny the [motion] with respect to Counts I through VIII.").

When a plaintiff fails to respond or provide any facts specifically related to some counts in their response to a motion to dismiss, those claims may be forfeited. *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016). This has occurred here. As such, the motion to dismiss counts (ix) and (x) is granted.

**IV.    Conclusion**

For the above reasons, counts (iv), (vi), (vii), (ix), and (x) are dismissed without prejudice.

Entered: October 9, 2025                                      By: _____

Iain D. Johnston
U.S. District Judge

17