IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RICHARD J. HEIMER,

        Plaintiff,

    v.

CALEB BROWN, in his individual capacity;
EDGAR ALTAMIRANO,
in his individual capacity;
SAM HAWLEY, in his individual capacity;
THOMAS FARONE, in his individual capacity;
PHILLIPS HARRIS, in his individual capacity;
and THE VILLAGE OF ROSCOE;

        Defendants.

Judge Ian D. Johnston

No. 25-cv-50250

JURY TRIAL DEMANDED

### ANSWER TO COMPLAINT

NOW COMES Defendants, VILLAGE OF ROSCOE, CALEB BROWN, EDGAR ALTAMIRANO, SAM HAWLEY, THOMAS FARONE and PHILLIP HARRIS, by and through their counsel, ANCEL GLINK, P.C., and for their Answer to Plaintiff's Complaint at Law, states the following:

1.    In the early afternoon of October 26, 2003, Richard Heimer was at home with Jessica Heimer and their young son. Richard, Jessica and their son had previously done some shopping, returned home, and had some lunch. Richard and Jessica got their son situated so they could do some work around the home. Richard and Jessica then tried to remove an old washing machine from the laundry room.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶1.**

2. Richard had a valid Illinois FOID Card and an Illinois Concealed Carry Permit. Richard was carrying a handgun in a secure inside the waistband holster when he went shopping. Richard kept the handgun in the holster when he returned home.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶2.**

3. Richard turned off the water valves for the water lines going to the washing machine. When Richard disconnected the water lines, water poured out of the water lines. Richard handed the water lines to Jessica so he could try to turn off the water. Jessica accidentally dropped the water lines and Richard bent down to pick them up. When Richard bent over, the handgun, while still in the holster, discharged. The bullet passed through an opening at the bottom of the holster and went through the back of Richard's pants. Richard's son was standing a few feet behind Richard in the hallway leading into the laundry room. The bullet hit Richard's son in the leg.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶3.**

4. Richard and Jessica took their son out of the home to the front yard, and Richard applied a tourniquet while Jessica held their son and yelled for help. The tourniquet Richard applied quickly stopped the bleeding.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶4.**

5. After the police arrived, they conducted a short investigation and arrested Richard for child endangerment. The investigation, however, failed to uncover any facts that could have supported charging Richard with child endangerment. The police investigation showed that

2

Richard had a handgun in a holster in a half-cocked position. The police also learned that Richard was not touching the handgun when it discharged.

**ANSWER:** **Defendants deny the allegations of ¶5.**

6. The police decided that simply carrying, in a holster, a handgun that discharged for some unknown reason constituted child endangerment. The subsequent bill of indictment alleged that Richard endangered the life or health of his son because Richard "carried a firearm half-cocked" around his son.

**ANSWER:** **Defendants deny the allegations of ¶6.**

7. Both the Chief of Police for the Village of Roscoe (Sam Hawley) and the Deputy Chief of Police (Thomas Farone) came to Richard's home with the other officers. Defendant Hawley had overall control of the investigation and searches conducted by the police at the scene. Defendant Hawley and Defendant Farone unlawfully entered and searched Richard's home. The police subsequently obtained a warrant, without probable cause, and searched Richard's home again. As part of the search, the police seized, among other things, all of Richard's firearms and ammunition. Defendant Hawley, Defendant Brown and Defendant Harris were involved in obtaining the warrant and search Richard's home and seizing his firearms.

**ANSWER:** **Defendants admit the allegations of ¶7, except they deny defendant Hawley controlled "searches," any defendant unlawfully entered the home, the warrant lacked probable cause, multiple searches, that defendant Hawley was involved in procurement of the warrant, and defendants lack knowledge or information sufficient to form a belief as to whether all of Richard's firearms and ammunition were seized.**

8. Without any basis whatsoever, felony charges of Reckless Discharge of a Firearm and Reckless Conduct were subsequently filed against Richard.

3

**ANSWER:** **Defendants admit the charges were filed, and deny the remaining allegations of ¶8.**

9. The state submitted a bill of indictment to a grand jury. The grand jury rejected the bill of indictment and returned it as "no true bill." The state subsequently dropped all charges against Richard.

**ANSWER:** **On information and belief defendants admit the allegations of ¶9.**

## JURISDICTION AND VENUE

10. This Complaint seeks remedies pursuant to 42 U.S.C. Sections 1983 and 1988, alleging violations of the Fourth, Second and Fourteenth Amendments to the Constitution of the United States of America, as well as the laws of the State of Illinois.

**ANSWER:** **Defendants admit the remaining allegations of ¶10, except they deny the merits of the allegations.**

11. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. Sections 1343 and 1367.

**ANSWER:** **Defendants admit the allegations of ¶11.**

12. Venue is proper before this Honorable Court pursuant to 28 U.S.C. Section 1391(b).

**ANSWER:** **Defendants admit the allegations of ¶12.**

### Parties

13. The Plaintiff Richard Heimer is an individual who currently resides at 11996 Baneberry Dr., Apt. 1D, Roscoe IL 61073.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶13.**

4

14.     Defendant Sam Hawley was at all times relevant to this complaint the Chief of Police of the Roscoe Police Department. As Chief of Police, Defendant Hawley is the "head of the police department, shall have supervision of all members of the department who are on duty and shall be responsible for the proper management and conduct of the department." Further, "[a]ll members of the police department shall, at all times during the performance of their duties, be subject to the direction and control of the police chief."

**ANSWER:     Defendants admit the allegations of ¶14.**

15.     Defendant Edgar Altamirano was at all times relevant to this complaint a patrol officer for the Roscoe Police Department.

**ANSWER:     Defendants admit the allegations of ¶15.**

16.     Defendant Caleb Brown was at all times relevant to this complaint a sergeant with the Roscoe Police Department.

**ANSWER:     Defendants admit the allegations of ¶16.**

17.     Defendant Phillip Harris was at all times relevant to this complaint a detective with the Roscoe Police Department.

**ANSWER:     Defendants admit the allegations of ¶17.**

18.     Defendant Thomas Farone was at all times relevant to this complaint the deputy police chief of the Roscoe Police Department.

**ANSWER:     Defendants admit the allegations of ¶18.**

19.     Defendant Village of Roscoe is, and was at all times relevant to this complaint, a municipal corporation.

**ANSWER:     Defendants admit the allegations of ¶19.**

## ALLEGED FACTS

**A.      The Underlying Incident**

20.      Richard Heimer and Jessica Heimer lived at 1058 Bitterroot Rd, #2, Roscoe, Illinois with their two children in October 2023. In October 2023, Richard's son was 2 years old, and his daughter was 11 years old.

**ANSWER:      Defendants admit the allegations of ¶20, except for the address.**

21.      October 26, 2023, was a school day, and Richard's oldest daughter was in school.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶21.**

22.      Richard's son, given his age, was not yet in school and was with Richard and Jessica.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶22.**

23.      Richard and Jessica had purchased a new washing machine and dryer prior to October 26, 2023, but had not yet installed these appliances.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶23.**

24.      In the late morning of October 26, 2023, Richard, Jessica and their son went to Walmart to get groceries and other household items.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶24.**

25.      At all relevant times, Richard had a valid Illinois FOID Card and an Illinois Concealed Carry Permit.

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶25, regarding "all relevant times."**

26.     On October 26, 2023, Richard was carrying a Tisas 1911/A1 handgun in an inside the waistband holster. The holster was on Richard's right side and was connected to his belt by two belt clips that were connected to the holster. The two belt clip holster is a secure holster.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶26.**

27.     Richard's holster completely covered the handgun's trigger. The Tisas 1911/A1 handgun has multiple safeties.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶27.**

28.     The handgun was in a half-cocked position.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations in ¶28.**

29.     The owner's manual for the Tisas 1911/A1 states that the handgun's safety devices function when the handgun is carried in the half-cocked position.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶29.**

30.     When Richard and Jessica returned home with their son, they made lunch and got their son settled for the afternoon.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶30.**

31.     Richard and Jessica decided to remove the old washing machine and install the new washing machine.

7

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶30.**

32. When Richard disconnected the water lines from the old washing machine, water started pouring out of the water lines. There was a problem with the water valves that made turning off the water difficult.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶32.**

33. Richard handed the water lines to Jessica while he tried to turn off the water. Jessica accidentally dropped the water lines.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶33.**

34. Richard bent over to pick up the water lines and the handgun discharged.

**ANSWER:** **On information and belief defendants admit the allegations of ¶34.**

35. Richard did not touch or hold the handgun when it discharged.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶35.**

36. The bullet passed through the opening at the bottom of the holster and went through the back of Richard's pants.

**ANSWER:** **Defendants admit the allegations in ¶36.**

37. The bullet struck Richard and Jessica's son in the leg. Richard's son was standing behind Richard in a hallway that connected the living area in the residence to the laundry room.

**ANSWER:** **Defendants admit the allegations in ¶37, except they lack knowledge or information sufficient to form a belief as to where Richard's son was when shot.**

38.     Richard removed the handgun from the holster, inspected the handgun and placed it on the floor of the laundry room.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶38.**

39.     As soon as Richard and Jessica learned that their son had been shot in the leg, they took him out of the house to the front lawn and Jessia yelled for help.

**ANSWER:     Upon information and belief, defendants admit the allegations in ¶39.**

40.     Jessica held their son as they both sat on the ground, while Richard applied a tourniquet to his leg. The bleeding quickly stopped after the tourniquet was applied.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶40.**

41.     Jessica asked a neighbor to call 911.

**ANSWER:     Defendants admit a neighbor called 911, and lack knowledge or information sufficient to form a belief as to the remaining allegations of ¶41.**

42.     On information and belief, two neighbors called 911 to report that a woman was yelling and holding a child.

**ANSWER:     Defendants admit the allegations of ¶42, but deny the call is accurately described in ¶42.**

**B.     The Police Investigation At Richard's Home And His Arrest**

43.     On information and belief, one of the first officers to arrive at the scene was Defendant Brown.

**ANSWER:     Defendants admit the allegations in ¶43.**

44. When Defendant Brown arrived at the scene, Jessica was holding her son and Richard was holding the tourniquet.

**ANSWER: Defendants admit the allegations of ¶44.**

45. Defendant Brown quickly evaluated Richard and Jessica's son and noticed that the bleeding had stopped.

**ANSWER: Upon information and belief, defendants admit the allegations of ¶45, except they lack knowledge or information sufficient to form a belief regarding whether the bleeding stopped.**

46. Defendant Brown did not question Richard at that time.

**ANSWER: Defendants admit the allegations of ¶46.**

47. Defendant Brown did not question Richard or Jessica at any time prior to Richard's arrest.

**ANSWER: Defendants admit the allegations of ¶47.**

48. Defendant Brown did not examine Richard's clothing. If he had, he would have observed that there was a hole in the rear back pocket of Richard's pants.

**ANSWER: Defendants deny defendant Brown did not examine Richard's clothing and admit the remaining allegations of ¶48.**

49. Defendant Brown interviewed two people at the scene who had called 911. Both individuals told Defendant Brown that they did not see or hear anything suspicious prior to their hearing Jessica yelling for help.

**ANSWER: Defendants admit the allegations of ¶49.**

50. Defendant Altamirano arrived shortly after Defendant Brown arrived. On information and belief, Defendants Hawley, Farone and Harris arrived shortly before or after Defendant Altamirano arrived at Richard's residence.

**ANSWER: Defendants admit the allegations in ¶50, except as to defendant Farone.**

51. When Defendant Altamirano arrived on the scene, Defendant Brown and the paramedics were providing medical assistance to Richard's son.

**ANSWER: Defendants admit the allegations of ¶51.**

52. Defendant Altamirano interviewed Richard soon after he arrived at the scene. During that interview, Richard explained that the handgun had discharged while in his holster. Richard showed Defendant Altamirano the holster, which Richard was still wearing. Defendant Altamirano observed a hole in the back of Richard's pants that was consistent with the handgun discharging while in Richard's holster.

**ANSWER: Defendants admit the allegations of ¶52.**

53. Richard removed his inside the waistband holster and left it on the ground after showing it to Defendant Altamirano.

**ANSWER: Defendants admit the allegations of ¶53.**

54. Richard told Defendant Altamirano that he did not know why the Tisas handgun discharged, but that he was not touching the handgun when it discharged.

**ANSWER: Defendants admit the allegations of ¶54.**

55. Defendant Altamirano took pictures of Richard's holster and pants during the interview. These pictures are separate and apart from any video taken by Defendant Altamirano's body camera, if he was wearing one.

**ANSWER: Defendants admit the allegations of ¶55.**

11

56. Richard told Defendant Altamirano that he had left the handgun in the laundry room.

**ANSWER:** **Defendants admit the allegations of ¶56.**

57. Defendant Altamirano did not interview Jessica.

**ANSWER:** **On information and belief defendants admit the allegations of ¶57.**

58. After Defendant Altamirano interviewed Richard, he interviewed one of Richard's neighbors. On information and belief, the neighbor told Defendant Altamirano that he did not see or hear anything suspicious prior to hearing the sirens of the approaching officers.

**ANSWER:** **Defendants admit the allegations in ¶58, except the neighbor was not "he."**

59. After Defendant Altamirano completed interviewing Richard, Defendant Harris interviewed Richard.

**ANSWER:** **Defendants admit the allegations of ¶59.**

60. As part of the investigation, Defendant Harris asked Richard to show him where the incident happened. Richard agreed to show Defendant Harris the laundry room where the incident occurred.

**ANSWER:** **Defendants admit the allegations of ¶60.**

61. Richard took Defendant Harris into the garage and up a fight of steps that led to the laundry room. Richard showed Defendant Harris that the incident occurred in the laundry room close to a doorway that connected the laundry room to a hallway leading into the residence.

**ANSWER:** **Defendants admit the allegations of ¶61.**

62. Richard explained to Defendant Harris that his son was standing in the hallway close to the entrance to the laundry room when the handgun discharged.

**ANSWER:** **Defendants deny the allegations of ¶62.**

63. Richard was not facing his son when the handgun discharged.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶63.**

64. When Richard and Defendant Harris entered the Laundry Room, Defendant Farone was in Richard's residence. Defendant Farone was standing in the hallway that led into the Laundry Room. Defendant Farone did not ask Richard for consent to enter his home, and Defendant Farone did not have a warrant to enter Richard's home.

**ANSWER: Defendants deny the allegations of ¶64.**

65. On information and belief, Defendant Farone did not prepare a report documenting his activities at the scene.

**ANSWER: Defendants admit the allegations of ¶65.**

66. Richard and Defendant Harris left the laundry room and returned to the front yard. When Richard and Defendant Harris left the laundry room, Defendant Farone was still in the hallway leading to the laundry room.

**ANSWER: Defendants deny the allegations of ¶66.**

67. At some point after speaking with Defendant Harris, Defendant Altamirano approached Richard and asked if he would consent to a search of his home. Richard refused to consent to a search of his home.

**ANSWER: Defendants admit the allegations of ¶67.**

68. Immediately after Richard refused to consent to a search of his home, Defendant Altamirano was instructed to arrest Richard for Endangering the Life or Health of a Child.

**ANSWER: Defendants admit the allegations in ¶68, except they deny it was "immediately" as alleged.**

13

69. Defendant Altamirano arrested Richard. Richard was handcuffed and placed in a police vehicle.

**ANSWER: Defendants admit the allegations of ¶69.**

70. The police had been at Richard and Jessica's residence for approximately 45 minutes prior to Richard's arrest.

**ANSWER: Defendants deny the allegations of ¶70.**

71. Richard was taken to the Roscoe Police Station.

**ANSWER: Defendants admit the allegations of ¶71.**

72. At the police station, the police seized Richard's clothing as evidence. The order to seize Richard's clothing was issued by Defendant Farone.

**ANSWER: Defendants admit the allegations of ¶72.**

73. Defendant Altamirano inspected Richard's clothing, including his boxers. Defendant Altamirano observed that a burn mark was visible on Richard's boxers where the muzzle of the handgun would have been located when carried in Richard's holster.

**ANSWER: Defendants admit the allegations of ¶73.**

74. There was no indication of a powder residue on the outer side of Richard's pants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶74.**

75. The police never tested Richard's hands for powder residue.

**ANSWER: Defendants admit the allegations of ¶75.**

76. At the police station, Richard was told he was being charged with misdemeanor Child Endangerment.

**ANSWER: Defendants admit the allegations of ¶76.**

77. Richard was placed in jail and held for 36 hours.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶77.**

78. Prior to his bond hearing, Richard was told he was being charged with Child Endangerment and felony Reckless Discharge of a Firearm.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶78.**

C. **The Protective Sweep**

79. Between the time the police initially arrived at Richard's residence and his arrest, Richard only entered the residence with Defendant Harris for a brief period of time.

**ANSWER: Defendants admit the allegations of ¶79.**

80. On information and belief, prior to Richard's arrest, Defendant Hawley and a deputy from the Winnebago County Sheriff's Department (Deputy Metzler), entered Richard's residence and conducted what Defendant Hawley called a protective sweep.

**ANSWER: Defendants admit the allegations of ¶79.**

81. Richard was not in the residence when the "protective sweep" occurred.

**ANSWER: Defendants admit the allegations of ¶81.**

82. Defendant Brown had not ordered Richard's arrest prior to the "protective sweep."

**ANSWER: Defendants admit the allegations of ¶82.**

83. A warrant for Richard's arrest had not been issued prior to the "protective sweep" being performed.

**ANSWER: Defendants admit the allegations of ¶83.**

15

84.     While Defendant Hawley stated in his report that he "conducted a protective sweep of the interior of the residence" and identified Deputy Metzler as having accompanied him, Defendant Hawley makes no mention of Deputy Farone being in the residence or accompanying him on the "protective sweep."

**ANSWER:     Defendants admit the allegations of ¶84.**

**D.     The Interior Layout of Richard's Residence**

85.     The old washing machine and dryer were located in a laundry room that was connected to the garage by a door and some stairs. Richard's apartment was on the second floor of the apartment complex. The staircase from the laundry room descended to the back of the garage, which was located on the ground floor. The laundry room had a second doorway that opened into a hallway that went into the home ("Laundry Room Hallway"). A bathroom was located on the left side of the Laundry Room Hallway right after the doorway that opened into the laundry room.

**ANSWER:     Defendants admit the allegations of ¶85.**

86.     One end of the Laundry Room Hallway ended at the doorway to the laundry room. At the other end of the Laundry Room Hallway were doorways to the apartment's two bedrooms.

**ANSWER:     Defendants admit the allegations of ¶86.**

87.     The Laundry Room Hallway fed into a second hallway ("Living Room Hallway") that was connected to the Laundry Room Hallway in a right angle.

**ANSWER:     Defendants admit the allegations of ¶87.**

16

88. The Living Room Hallway led to the living room and dining room. A doorway off the Living Room Hallway on the right allowed access to the kitchen. The front door of the apartment was located in the living room.

**ANSWER: Defendants admit the allegations of ¶88, except as to the reference to a "doorway."**

**E. The Search Warrant And Seizure of Firearms, Ammunition and other Items**

**i. Defendant' Brown's Affidavit In Support of A Search Warrant**

89. After Richard's arrest, Defendant Brown prepared an affidavit ("Affidavit") seeking a warrant to search Richard's residence.

**ANSWER: Defendants admit the allegations of ¶89.**

90. The only crime referenced in the Affidavit was Child Endangerment.

**ANSWER: Defendants admit the allegations of ¶90.**

91. Defendant Brown did not provide any facts in the Affidavit that would indicate that Richard was carrying the Tisas handgun in a dangerous manner, or that Richard was touching the handgun when it discharged.

**ANSWER: Defendants admit the affidavit did not say Richard was touching the gun and deny the remaining allegations in ¶91.**

92. In the Affidavit, Defendant Brown asserts that Richard had stated that the "firearm was accidentally discharged from the holster while he was attempting to service a washing machine." There is nothing in the Affidavit to suggest that the incident occurred any place other than in the laundry room.

**ANSWER: Defendants admit the allegation quotes the affidavit accurately and deny the remaining allegations of ¶92.**

17

93. Defendant Brown stated that a protective sweep of the residence was conducted by Defendant Hawley, who saw in "plain view, several gun cases . . . a ballistic-style black vest containing an AR-15 style magazine."

**ANSWER: Defendants admit the allegations of ¶93.**

94. Defendant Brown stated that he believed "other weapons and ammunition may still be in the residence." Richard had a valid FOID Card at the time and his possessing such firearms was lawful.

**ANSWER: Defendants admit the allegations of ¶94 except they deny possessing the firearm was lawful.**

95. On information and belief, Defendant Brown knew that Richard had a valid FOID Card when he signed the Affidavit.

**ANSWER: Defendants admit the allegations of ¶95.**

96. Defendant Brown did not state in the Affidavit that any crime was being committed by Richard possessing firearms and ammunition or a "ballistic-style black vest containing an AR-15 style magazine."

**ANSWER: Defendants deny the allegations of ¶96.**

97. Defendant Brown did not explain how those items could constitute evidence for any alleged crime.

**ANSWER: Defendants deny the allegations of ¶97.**

98. Other than alleging that Richard was carrying a handgun in a holster which discharged for some unstated reason, Defendant Brown did not provide any information that Richard posed a danger to anyone.

**ANSWER: Defendants deny the allegations of ¶98.**

18

**ii.      The Complaint for Search Warrant**

99.      Defendant Brown was also the complainant in the Complaint for Search Warrant seeking a warrant to search Richard and Jessica's home.

**ANSWER:      Defendants admit the allegations of ¶99.**

100.      The Complaint states that the police wanted to search for various things that "have been used in the commission of, or which may constitute the commission of the offense of Child Endangerment . . ."

**ANSWER:      Defendants admit the allegations of ¶100.**

101.      The Complaint identifies a number of items, including, "firearms, ammunition, weapons, and any other items that may be associated with the crime of Child Endangerment."

**ANSWER**:      **Defendants admit the allegations of ¶101.**

102.      There is no mention or even a suggestion that any weapons, other than the Tisas handgun, were involved in any criminal action by Richard. Nor are there any allegations or claims that it was unlawful for Richard to possess such firearms located in his home.

**ANSWER**:      **Defendants deny the allegations of ¶102.**

103.      At the time the Complaint was prepared, Defendant Brown knew that Richard's son was shot after the Tisas handgun discharged.

**ANSWER**:      **Defendants admit the allegations of ¶103.**

**iii.      The Search Warrant and Search of Richard's Home**

104.      A search warrant was issued on October 26, 2023, at 5:40 pm.

**ANSWER**:      **Upon information and belief, defendants admit the allegations of ¶104.**

105.      The search warrant called for the seizure of, among other things, any "firearms, ammunition, [and] weapons . . ."

19

**ANSWER**:    **Defendants admit the allegations of ¶105.**

106.    Defendant Harris was given a copy of the search warrant. On information and belief, Defendant Harris was instructed to conduct a search of Richard's residence and to seize various items from Richard's residence.

**ANSWER**:    **Defendants admit the allegations of ¶106.**

107.    At approximately 6:11 pm on October 26, 2023, Defendant Harris searched Richard's residence with Crime Scene Detective Suddarth.

**ANSWER**:    **Defendants admit the allegations of ¶107.**

108.    The following items were seized from Richard's residence during the search: (a) a black nylon belt, (b) a black inside the pants holster, (c) a black magazine containing 8 rounds of .45 caliber ammunition, (d) the handgun Richard was carrying that discharged a round, (e) a tan ballistic vest with 5 AR-15 style magazines, (f) a black ballistic vest, (g) a Smith and Wesson handgun, (h) a Ruger AR-15 style rifle, (i) one rifle round (.308 Cal), (j) a bag containing "several" .223 cal. rounds, (k) 10 rounds of .45 cal. ammunition, (l) a black gun case for a .45 cal. handgun, (m) a black box with some cannabis, (n) several rounds of 7.62 ammunition, (o) seven rounds of 12 gauge ammunition, (p) a "silver & gunmetal revolver" with a wooden handle, and (q) a bag or box with ammunition.

**ANSWER**:    **Defendants admit the allegations of ¶108.**

109.    Richard was not given a hearing prior to the seizure of the firearms, ammunition and magazines.

**ANSWER**:    **Defendants deny the allegations of ¶109.**

**F.    The Inadequate Police Investigation**

20

110. Prior to Richard's arrest, Defendants Harris and Altamirano both had the opportunity to examine the holster Richard was wearing when the Tisas handgun discharged. Defendants Harris and Altamirano should have known that the holster Richard was wearing would completely cover the trigger when the handgun was placed in the holster.

**ANSWER**: **Defendants deny the allegations of ¶110.**

111. After Richard was arrested, he was taken to the Roscoe police station.

**ANSWER**: **Defendants admit the allegations of ¶111.**

112. At the police station, Richard was told to get undressed. A search of his clothing showed that there was a powder burn on Richard's underpants where the muzzle of the Tisas handgun would have been, if it was in the holster Richard was wearing.

**ANSWER**: **Defendants admit the allegations of ¶112 and lack knowledge sufficient to form a belief regarding the position of the muzzle in relation to the holster.**

113. The holster Richard was carrying had a hard surface that completely covered the trigger.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶113.**

114. The bullet hole in the back of Richard's pants and the powder burn on his underpants showed that the Tisas handgun discharged in the holster and that Richard was not facing his son when the Tisas handgun discharged.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶114.**

115. On information and belief, the Defendants did no investigation into the safety features of the Tisas handgun Richard was carrying prior to arresting Richard.

21

**ANSWER**:    **Defendants admit the allegations of ¶115.**

116.    On information and belief, the Defendants did no investigation into what actually caused the Tisas handgun to discharge, other than the questions they asked Richard, prior to his arrest. On information and belief, the Defendants never conducted such an investigation.

**ANSWER**:    **Defendants admit the allegations of ¶116.**

117.    On information and belief, the Defendants did no investigation into what safety features were engaged when the Tisas handgun discharged, prior to Richard's arrest. On information and belief, the Defendants never conducted such an investigation.

**ANSWER**:    **Defendants admit the allegations of ¶117.**

118.    Defendants did no investigation into whether the Tisas handgun Richard was carrying had any defects, prior to his arrest. On information and belief, the Defendants never conducted such an investigation.

**ANSWER**:    **Defendants admit the allegations of ¶118.**

119.    Defendants did not investigate Richard's understanding of the safety features of the Tisas handgun, prior to his arrest. Defendants never conducted such an investigation.

**ANSWER**:    **Defendants admit the allegations of ¶119.**

**G.    The Defendants' Investigation Did Not Reveal Probable Cause to Arrest Richard**

120.    Prior to Richard's arrest, he was only interviewed by Defendant Altamirano and Defendant Harris. Defendant Brown, who ordered Defendant Altamirano to arrest Richard, had not interviewed Richard or Jessica. Richard was not interviewed by Defendant Hawley or Defendant Farone.

**ANSWER**:    **Defendants admit the allegations of ¶120.**

22

121. Defendant Altamirano's investigation consisted of his interviewing Richard and Michele L. Van Fleet, who is one of Richard's neighbors. Ms. Van Fleet told Defendant Altamirano that she had not heard anything suspicious prior to hearing sirens.

**ANSWER**: **Defendants admit the allegations of ¶121, except they deny the paragraph describes the entire investigation.**

122. Defendant Brown told Defendant Altamirano that he had spoken to two individuals, neither of whom had heard anything suspicious prior to hearing Jessica yelling for help.

**ANSWER**: **Defendants admit the allegations of ¶122.**

123. The information obtained by Defendant Altamirano and Defendant Harris did not create probable cause that Richard had committed any crime.

**ANSWER**: **Defendants deny the allegations of ¶123.**

124. Neither Defendants Hawley or Brown personally collected sufficient information to create probable cause that Richard committed any crime in connection with the discharge of the handgun. Nor did Defendant Brown collect sufficient information from Defendant Altamirano or Defendant Harris, when combined with the information Defendant Brown had personally collected, to show that probable cause existed to support charging Richard with Child Endangerment.

**ANSWER**: **Defendants deny the allegations of ¶124.**

125. Prior to Richard's arrest, Defendants Hawley or Brown did not collect information from any source showing that probable cause existed that Richard committed any crime in connection with the discharge of the handgun.

**ANSWER**: **Defendants deny the allegations of ¶125.**

126. Defendant Brown was speaking with Assistant State's Attorney Paulson prior to Defendant Brown ordering Defendant Altamirano to arrest Richard.

**ANSWER**: **Defendants admit the allegations of ¶126.**

127. On information and belief, Defendant Brown told ASA Paulson during this call that Richard was handling the firearm in a manner that caused it to discharge. Any such statement by Defendant Brown to ASA Paulson would have been false.

**ANSWER**: **Defendants deny the allegations of ¶127.**

128. The illegal search of Richard's home did not discover any evidence that would create probable cause that Richard committed any crime in connection with the discharge of his handgun.

**ANSWER**: **Defendants deny the allegations of ¶128.**

**H.      Richard's Prosecution**

> **i.      The Attempt To Keep Richard Incarcerated While Charges Were Pending, and The Charges Against Richard**

129. When Richard was arrested (a) Defendants were told that Richard was carrying his Tisas handgun in a holster, (b) Defendants Altamirano and Harris had inspected the holster and could easily determine that the trigger of the Tisas handgun would have been completely covered by the holster, (c) Defendants should have known that the Tisas handgun had multiple safeties, (d) Defendants were told that Richard was not touching or handling the Tisas handgun when it discharged and they had no evidence whatsoever to the contrary, (e) the witnesses interviewed by Defendant Brown and Defendant Altamirano had not heard anything unusual going on in the residence before the police arrived, (f) Defendants had physical evidence that the Tisas handgun discharge while in the holster, given that a hole was found on the rear pocket of Richard's pants, (g) Defendants had physical evidence that Richard was not facing his son when

24

the handgun discharged, (h) Defendants did not have facts showing that Richard was aware his son was standing behind him when the handgun discharged, and (i) Defendant Hawley knew that water was pouring out of the water lines for the washing machine and that he was unable to turn off the water.

**ANSWER**: **Defendants admit the allegations of ¶129, except they deny sub-paragraphs (b), (c), (g) and (h).**

130. On October 23, 2023, the State of Illinois filed against Richard a Petition to Deny Pretrial Release. In the Petition, the State argued that Richard posed a "real and present threat to the safety of any person or persons or the community," and that Richard was being charged with Reckless Discharge of a Firearm.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶130.**

131. A hearing on the State of Illinois' Petition to Deny Pretrial Release was held on October 27, 2023. At the hearing, the court rejected the state's claim that it had met, by clear and convincing evidence, its burden of proving that Richard posed a threat to anyone.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶131.**

132. On October 27, 2023, the court entered an initial Conditions of Pretrial Release Order. In the October 27, 2023 Conditions of Pretrial Release, Richard was ordered, among other things, to "[r]efrain from possessing a firearm or other dangerous weapon," and to "[s]urrender FOID/Concealed carry license to Pre-trial services [and] Firearms, Ammo shall remain in custody or law enforcement while the case is pending."

25

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶132.**

133. On October 30, 2023, the court entered a Notice of Conditions of Pretrial Release Upon Release from Custody that largely repeated the conditions in the October 27, 2023 Conditions of Pretrial Release.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶133.**

134. On October 27, 2023, the State of Illinois filed an Information against Richard, which contained two charges: (a) Reckless Discharge of a Firearm (felony), and (b) Endangering the Life or Health of a Child (misdemeanor) .

**ANSWER:** **Defendants admit the allegations of ¶134.**

135. With respect to the Reckless Discharge of a Firearm charge, the State of Illinois alleged that Richard "discharged a firearm in a reckless manner endangering the bodily safety of minor child J.H."

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶135.**

136. With respect to the charge of Endangering the Life or Health of a Child, the State of Illinois claimed that Richard "knowingly caused or permitted the life or health of a child . . . to be endangered."

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶136.**

    **ii.** **The Charges Against Richard Were Not Supported By Probable Cause**

137. Richard was arrested for misdemeanor Child Endangerment.

**ANSWER**:     **Defendants admit the allegations of ¶137.**

138.     On October 27, 2023, the day after the incident, Detective Harris contacted ASA Hanley and advised him as to the findings of the search warrant.

**ANSWER:**     **On information and belief, defendants admit the allegations of ¶138.**

139.     Neither Defendant Brown nor Defendant Harris had information that would create probable cause that Richard committed a crime in connection with the discharge of his handgun.

**ANSWER**:     **Defendants deny the allegations of ¶139.**

140.     On information and belief, based on the false and/or misleading information provided to State prosecutors, Richard was later charged with: Reckless Discharge of a Firearm (720-5/24-1.5), and Reckless Discharge (720 ILCS 5/12-5(a)(2)).

**ANSWER**:     **Defendants admit the charges filed, and deny the remaining allegations of ¶140.**

141.     Neither of these charges was supported by probable cause.

**ANSWER**:     **Defendants deny the allegations of ¶141.**

142.     There was no evidence that Richard was carrying his handgun in an inappropriate manner.

**ANSWER**:     **Defendants deny the allegations of ¶142.**

143.     There was no evidence that Richard was holding or handling his handgun when it discharged.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the allegations of the allegations of ¶143.**

    **iii.**     **The Dismissal of The Charges Against Richard**

27

144. The State of Illinois prepared an indictment against Richard, accusing him of Reckless Discharge of a Firearm, Reckless Conduct, and Endangering The Life or Health of a Child (720-5/12C-5(a)).

**ANSWER:** **Upon information and belief, defendants admit the allegations of ¶144.**

145. In Count 1 of the Bill of Indictment, the State accused Richard of Reckless Discharge of a Firearm. Count 1 alleges, that Richard "discharged a firearm while inside a room . . ." Carrying a firearm in a holster that covers the trigger cannot constitute Reckless Discharge of a Firearm, if that firearm discharges.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶145.**

146. No facts supported the claim that Richard discharged the Tisas handgun. On information and belief, Defendants Brown and Harris falsely represented to the States Attorney's Office that Richard was handling the Tisas handgun when it discharged.

**ANSWER:** **Defendants deny the allegations of ¶146.**

147. In Count 2 of the Bill of Indictment, the State accused Richard of Reckless Conduct. The State claimed that Richard "moved a washing machine while carrying a halfcocked firearm in a holster while [his son] was nearby . . ." Carrying a firearm in a holster that covers the trigger around a child does not constitute Reckless Conduct. On information and belief, Defendants Brown and Harris falsely represented to the States Attorney's Office that Richard was moving a washing machine when the Tisas firearm discharged. On information and belief, Defendants Brown and Harris falsely represented to the States Attorney's Office that Richard was handling the Tisas handgun when it discharged.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to what the state claimed or alleged, and deny the remaining allegations of ¶147.**

148. In Count 3 of the Bill of Indictment, the State accused Richard of Endangering the Life or Health of a Child. The State alleged that Richard "carried a firearm half-cocked around J.H." Carrying a firearm in a holster that covers the trigger around a child does not constitute Endangering the Life or Health of a Child. On information and belief, Defendants Brown and Harris falsely represented to the States Attorney's Office that Richard was moving a washing machine when the Tisas handgun discharged. On information and belief, Defendants Brown and Harris falsely represented to the States Attorney's Office that Richard was handling the Tisas handgun when it discharged.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to what the state claimed or alleged, and deny the remaining allegations of ¶148.**

149. The grand jury "returned a no true bill of indictment."

**ANSWER:** **Defendants admit the allegations of ¶149.**

150. A "no true bill of indictment" indicates that the grand jury determined that probable cause did not exist to support the charges against Richard.

**ANSWER:** **Defendants deny the allegations of ¶150.**

151. The State subsequently moved to have all of the charges against Richard dismissed.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶151.**

152. On June 4, 2024, all charges against Richard were dismissed.

29

**ANSWER: Defendants lack knowledge or information to form a belief as to the allegations of ¶152.**

## I. DCFS' Involvement

153. On information and belief, while the police were still at Richard's home, Defendant Altamirano called DCFS and notified DCFS about the incident.

**ANSWER: Defendants admit the allegations of ¶153.**

154. On information and belief, Defendant Brown directed Defendant Altamirano to contact DCFS.

**ANSWER: Defendants admit the allegations of ¶154.**

155. Richard's son was first brought for treatment to Javon Bea Hospital in Loves Park, Illinois. Jessica went with her son to the hospital.

**ANSWER: Defendants admit the allegations of ¶155.**

156. The son's care team wanted Richard and Jessica's son transferred to UW Health/Madison of Wisconsin Children's Hospital ("Children's Hospital"). He was transferred by ambulance to Children's Hospital, and Jessica accompanied him.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶156.**

157. Two representatives from DCFS came to Children's Hospital. On information and belief, at Children's Hospital, the DCFS representatives were told there was no indication of abuse.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶157.**

158. The DCFS representatives demanded that Jessica leave Children's Hospital and her son. They also demanded that she sign a safety plan.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶158.**

159. Jessica signed a safety plan that required both of her children to reside with Richard's parents.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶159.**

160. Richard is not aware of DCFS ever completing an investigation into the matter.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶160.**

161. Richard is not aware of DCFS ever determining that abuse was indicated.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶161.**

162. The safety plan was terminated and Richard and Jessica moved in with Richard's parents.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶162.**

**J.** **Defendants' Action Cause Richard Significant Emotional Trauma**

163. Richard suffered extreme emotional distress from his arrest, the illegal searches of his home, the removal of his children from their home, and his subsequent prosecution.

**ANSWER**: **Defendants deny the allegations of ¶163.**

31

164. Richard's arrest separated him from his son at a critical time. Richard was not able to look after his son and work with Jessica to ensure that their son received proper medical care. Nor was Richard able to care for and comfort his son.

**ANSWER**: **Defendants deny the allegations of ¶164.**

165. Richard was then accused without any basis for criminally harming his son, which caused Richard significant emotional distress.

**ANSWER**: **Defendants deny the allegations of ¶165.**

166. Richard was also subjected to months of criminal prosecution, which included the prosecution of two felony counts. The criminal prosecution and the resulting stress caused Richard added emotional distress.

**ANSWER**: **Defendants admit the prosecution and deny the remaining allegations of ¶166.**

167. The criminal prosecution and the resulting stress also caused Richard physical problems given his diabetes. The physical problems increased Richard's emotional distress.

**ANSWER**: **Defendants deny the allegations of ¶167.**

168. On information and belief, Richard and Jessica were forced by the landlord to leave their residence as a result of his arrest.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶168.**

169. Press reports concerning the incident repeated the claim that Richard had criminally injured and endangered his son. The press releases caused Richard to suffer embarrassment and additional emotional distress.

**ANSWER:** **Defendants deny the allegations of ¶169.**

32

## COUNT I
## 42 U.S.C. Section 1983
## (Defendants Hawley, Brown and Altamirano)
## (False Arrest/Unreasonable Seizure Under The Fourth Amendment)

170. Richard incorporates Paragraphs 1 through 169, above, by reference, as if fully rewritten herein.

**ANSWER:** **Defendants adopt and reallege their responses to ¶s 1 to 169 as their response to ¶170.**

171. Defendants Hawley, Brown and Altamirano, at all times relevant to this action, were acting under color of state law.

**ANSWER:** **Defendants admit the allegations of ¶171.**

172. Defendants Hawley, Brown and Altamirano unlawfully arrested and seized Plaintiff without probable cause or a warrant in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

**ANSWER:** **Defendants deny the allegations of ¶172.**

173. Defendant Hawley was in overall charge of the scene when Richard was arrested.

**ANSWER:** **Defendants deny the allegations of ¶173.**

174. Defendant Brown ordered Richard's arrest.

**ANSWER:** **Defendants admit the allegations of ¶174.**

175. Defendant Altamirano arrested Richard pursuant to an illegal order issued by Defendant Brown.

**ANSWER:** **Defendants deny the allegations of ¶175.**

176. Defendants Hawley, Brown and Altamirano intended to confine and seize Richard.

**ANSWER:** **Defendants deny the allegations of ¶176.**

33

177. Defendants Hawley, Brown and Altamirano' actions were not taken in good faith and were in violation of clearly established law.

**ANSWER**: **Defendants deny the allegations of ¶177.**

178. As a direct and proximate result of Defendants Hawley, Brown and Altamirano' unreasonable and unlawful actions, Richard has suffered damages for the violation of his constitutional rights.

**ANSWER**: **Defendants deny the allegations of ¶178.**

179. Defendants Hawley, Brown and Altamirano' actions were motivated by an evil motive or intent against Richard, or involved a "callous indifference to the federally protected rights" of the Plaintiff.

**ANSWER**: **Defendants deny the allegations of ¶179.**

WHEREFORE, Defendants pray that judgment be entered in their favor and against the Plaintiff.

**COUNT II**
**42 U.S.C. Section 1983**
**(Defendant Hawley)**
**(Unlawful Search of Richard's Home (protective sweep) Under the Fourth Amendment)**

180. Richard incorporates Paragraphs 1 through 169, above, by reference, as if fully rewritten herein.

**ANSWER**: **Defendant adopts and realleges his responses to ¶s 1 to 169 as his response to ¶180.**

181. Defendant Hawley, at all times relevant to this action, was acting under color of state law.

**ANSWER**: **Defendant admits the allegations of ¶181.**

182.    Without a warrant, Defendant Hawley entered and unlawfully searched Richard's home. No justification existed for Defendant Hawley's search of Richard's home without a warrant.

**ANSWER:    Defendant denies the allegations of ¶182.**

183.    Defendant Hawley did not have probable cause to search Richard's home.

**ANSWER:    Defendant denies searching plaintiff's home..**

184.    Exigent circumstances did not exist that would have supported the search of Richard's home without a warrant.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the allegations of ¶184.**

185.    Defendant Hawley did not have a basis to search Richard's home without a warrant under the protective sweep doctrine.

**ANSWER:    Defendant denies the allegations of ¶185.**

186.    Defendant Hawley's actions were not taken in good faith and were in violation of clearly established law.

**ANSWER:    Defendant denies the allegations of ¶186.**

187.    As a direct and proximate result of Defendant Hawley's unreasonable and unlawful actions, Richard has suffered damages for the violation of his constitutional rights.

**ANSWER:    Defendant denies the allegations of ¶187.**

188.    Defendant's actions were motivated by an evil motive or intent against Richard, or involved a "callous indifference to the federally protected rights" of the Plaintiff.

**ANSWER:    Defendant denies the allegations of ¶188.**

35

WHEREFORE, Defendant prays that judgment be entered in his favor and against the Plaintiff.

## COUNT III

### 42 U.S.C. Section 1983
### (Defendant Farone)
### (Unlawful Search of Richard's Home Under the Fourth Amendment)

189. Richard incorporates Paragraphs 1 through 169, above, by reference, as if fully rewritten herein.

**ANSWER: Defendant adopts and realleges his responses to ¶s 1 to 169 as his response to ¶189.**

190. Defendant Farone, at all times relevant to this action, was acting under color of state law.

**ANSWER: Defendant admits the allegations of ¶190.**

191. Without a warrant, Defendant Farone entered and unlawfully searched Richard's home. No justification existed for Defendant Farone's search of Richard's home without a warrant.

**ANSWER: Defendant denies the allegations of ¶191.**

192. Defendant Farone did not have probable cause to search Richard's home.

**ANSWER: Defendant denies searching plaintiff's home..**

193. Exigent circumstances did not exist that would have supported the search of Richard's home without a warrant.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the allegations of ¶193.**

194. Defendant Farone's actions were not taken in good faith and were in violation of clearly established law.

36

**ANSWER:     Defendant denies the allegations of ¶194.**

195.    As a direct and proximate result of Defendant Farone's unreasonable and unlawful actions, Richard has suffered damages for the violation of his constitutional rights.

**ANSWER:     Defendant denies the allegations of ¶195.**

196.    Defendant's actions were motivated by an evil motive or intent against Richard, or involved a "callous indifference to the federally protected rights" of the Plaintiff.

**ANSWER:     Defendant denies the allegations of ¶196.**

WHEREFORE, Defendant prays that judgment be entered in his favor and against the Plaintiff.

## COUNT IV

**42 U.S.C. Section 1983**
**(Defendants Harris and Brown)**
**(Unlawful Search of Richard's Home Under the Fourth Amendment)**

NO RESPONSE TO COUNT IV, ¶s 197 TO 204, IS REQUIRED AS THE COUNT WAS DISMISSED BY THE COURT'S OCTOBER 9, 2025 ORDER (DKT. 25).

## COUNT V

**42 U.S.C. Section 1983**
**(Defendants Brown and Harris)**
**(Malicious Prosecution Under The Fourth Amendment)**

205.    Richard incorporates Paragraphs 1 through 169, above, by reference, as if fully rewritten herein.

**ANSWER:     Defendants adopt and reallege their responses to ¶s 1 to 169 as their response to ¶205.**

206.    Defendants Brown and Harris, at all times relevant to this action, were acting under color of state law.

37

**ANSWER:** **Defendants admit the allegations of ¶206.**

207. Defendants Brown and Harris played integral roles in Richard's arrest and subsequent prosecution given their access and control of the information provided to state prosecutors.

**ANSWER:** **Defendants deny the allegations of ¶207.**

208. As a direct and proximate result of statements and information provided by Defendants Brown and Harris to local prosecutors, a criminal proceeding was initiated and continued against Richard.

**ANSWER**: **Defendants deny the allegations of ¶208.**

209. The charges brought against Richard were not supported by probable cause.

**ANSWER**: **Defendants deny the allegations of ¶209.**

210. The State of Illinois sought an indictment against Richard, and Defendant Harris testified before the grand jury.

**ANSWER**: **Defendants admit the allegations of ¶210.**

211. The grand jury refused to issue an indictment.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶211.**

212. After the grand jury refused to issue an indictment, the state dismissed the criminal charges against Richard and the criminal proceeding was terminated.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the allegations of ¶212.**

213. The criminal proceeding against Richard was brought with malice and bad faith.

**ANSWER**: **Defendants deny the allegations of ¶213.**

214.     Richard suffered regular and special damages as a result of the malicious prosecution.

**ANSWER**:     **Defendants deny the allegations of ¶214.**

215.     Richard's prosecution resulted in his being arrested, searched, detained, subjected to conditions of pretrial release and a criminal prosecution.

**ANSWER:**     **Defendants admit the allegations of ¶215.**

216.     Defendants Brown and Harris' malicious prosecution of Richard violated Richard's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**     **Defendants deny the allegations of ¶216.**

217.     As a direct and proximate result of Defendants' unreasonable and unlawful actions, Richard has suffered damages for the violation of his constitutional rights.

**ANSWER:**     **Defendants deny the allegations of ¶217.**

218.     Defendants' actions were motivated by an evil motive or intent against Richard, or involved a "callous indifference to the federally protected rights" of the Plaintiff.

**ANSWER**:     **Defendants deny the allegations of ¶218.**

WHEREFORE, Defendants pray that judgment be entered in their favor and against the Plaintiff.

## COUNT VI

**42 U.S.C. Section 1983**
**(Defendants Brown and Harris)**
**(Violation of Richard's Fourth Amendment Rights)**

NO RESPONSE TO COUNT VI, ¶s 219 TO 204, IS REQUIRED AS THE COUNT WAS DISMISSED BY THE COURT'S OCTOBER 9, 2025 ORDER (DKT. 25).

## COUNT VII

39

**42 U.S.C. Section 1983**
**(Defendants Brown and Harris)**
**(Violation of Richard's Second Amendment Rights)**

NO RESPONSE TO COUNT IV, ¶s 231 TO 247, IS REQUIRED AS THE COUNT WAS DISMISSED BY THE COURT'S OCTOBER 9, 2025 ORDER (DKT. 25).

**COUNT VIII**

**42 U.S.C. Section 1983**
**(Defendant Village of Roscoe)**
**(Violation of Richard's Second and Fourth Amendment Rights)**

247.     Richard incorporates Paragraphs 1 through 169, above, by reference, as if fully rewritten herein.

**ANSWER**:     **Defendant adopts and realleges its responses to ¶s 1 to 169 as its response to ¶247.**

248.     Defendant Hawley was the final decisionmaker for the Village of Rosco with respect to (a) the searches of Richard's home, (b) Richard's arrest, and (c) the malicious prosecution of Richard.

**ANSWER:     Defendant denies the allegations of ¶248.**

249.     Defendant Hawley personally conducted an illegal search of Richard's home.

**ANSWER:     Defendant denies the allegations of ¶249.**

250.     Defendant Hawley played a crucial role in obtaining the warrant for the search of Richard's home and the seizure of his firearms, ammunition and ballistic vests. On information and belief, Defendant Hawley made the final decision to seek the warrant and for the seizure of Richard's firearms, ammunition and ballistic vests.

**ANSWER:     Defendant denies the allegations of ¶250.**

251.     Defendant Hawley, on information and belief, knew and approved of Defendant Farone's illegal search of Richard's home.

40

**ANSWER:** **Defendant denies the allegations of ¶251.**

252. On information and belief, Defendant Hawley knew and approved Richard's arrest.

**ANSWER:** **Defendant admits the allegations of ¶252.**

253. [Sic 244] Defendant Hawley's decisions concerning the searches of Richard's home, the seizure of Richard's firearms, ammunition and ballistic vests, and Richard's arrest violated Richard's rights under the Second, Fourth and Fourteenth Amendments of the United States Constitution.

**ANSWER:** **Defendant denies the allegations of ¶253.**

254. [Sic 245] As a direct and proximate result of Defendant Village of Rosoce's unreasonable and unlawful actions, Richard has suffered damages for the violation of his constitutional rights.

**ANSWER:** **Defendant denies the allegations of ¶254.**

255. [Sic 246] Defendant Village of Roscoe's actions were motivated by an evil motive or intent against Richard, or involved a "callous indifference to the federally protected rights" of the Plaintiff.

**ANSWER:** **Defendant denies the allegations of ¶255.**

**WHEREFORE,** Defendant prays that judgment be entered in its favor and against the Plaintiff.

**COUNT IX**
**(Defendants Hawley, Brown and Altamirano)**
**(False arrest – Illinois State Law)**

NO RESPONSE TO COUNT IX, ¶s 256 TO 264, IS REQUIRED AS THE COUNT WAS DISMISSED BY THE COURT'S OCTOBER 9, 2025 ORDER (DKT. 25).

41

**COUNT X**
**(Defendants Brown and Harris)**
**(Malicious Prosecution – State Law)**

NO RESPONSE TO COUNT IV, ¶s 265 TO 274, IS REQUIRED AS THE COUNT WAS DISMISSED BY THE COURT'S OCTOBER 9, 2025 ORDER (DKT. 25).

WHEREFORE, Defendants, VILLAGE OF ROSCOE, CALEB BROWN, EDGAR ALTAMIRANO, SAM HAWLEY, THOMAS FARONE and PHILLIP HARRIS pray that judgment be entered in their favor and against the Plaintiff.

**AFFIRMATIVE DEFENSES**

Without prejudice to their prior denials, the Defendants, VILLAGE OF ROSCOE, CALEB BROWN, EDGAR ALTAMIRANO, SAM HAWLEY, THOMAS FARONE and PHILLIP HARRIS state the following as their affirmative defenses to Plaintiff's Complaint:

1. Plaintiff's claims are barred in whole or in part because Plaintiff's Complaint fails to state claims upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. Probable cause existed and supported Plaintiff's arrest, detention, and prosecution.

3. The independent investigation and charging authority of the State's Attorney broke the chain of causation of Plaintiff's unlawful pre-trial detention claim, malicious prosecution claims, and all other applicable claims.

4. The individual Defendants are entitled to qualified immunity as to the claims brought against them in that their actions did not violate clearly established constitutional rights.

42

5.     To the extent that Plaintiff attempts to impose liability on any Defendant for providing testimony in a legal proceeding, even including "false" testimony, that Defendant or those Defendants are entitled to absolute immunity from such liability.

6.     To the extent that Plaintiff attempts to impose liability on any Defendant based on conduct or decisions by any prosecutor falling within his prosecutorial function, that Defendant or those Defendants are entitled to absolute immunity from any such liability.

7.     The Villatge is immune from any claims by Plaintiff for punitive or exemplary damages.

WHEREFORE, the Defendants pray that this Court enter judgment in their favor and against the Plaintiff.

<strong>DEMAND FOR JURY TRIAL</strong>

Defendants hereby request that all issues be submitted to and determined by a jury.

Dated: November 13, 2025.

ANCEL GLINK, P.C.

By: _____
    Thomas G. DiCianni

Thomas G. DiCianni / ARDC #3127041
ANCEL GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax
tdicianni@ancelglink.com